

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Maryland

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| SHARIEEF DUPREE | ) | Case No. **13-0126SAG** |
| 2414 BARCLAY STREET | ) | |
| BALTIMORE, MARYLAND 21213 | ) | |
| DOB: 10/XX/1984 | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____June 5, 2012____ in the county of ____Baltimore City____ in the _____ District of ____Maryland____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. section 841(a)(1) | Possession of CDS with the Intent to Distribute |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ram Mahanand, Special Agent - ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/22/2013

_____
*Judge's signature*

City and state: Baltimore, Maryland

Stephanie A. Gallagher, U.S. Magistrate Judge
*Printed name and title*



## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ram Mahanand, being duly sworn, do hereby solemnly swear and affirm:

1. I am employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in Baltimore, Maryland and have been so since October 1989. As a Special Agent with ATF, one of my responsibilities is conducting criminal investigations concerning alleged violations of the Federal firearms laws. In my current assignment, I have conducted numerous investigations involving the illegal possession of firearms and ammunition by prohibited persons, persons trafficking firearms and narcotics and individuals that traffic firearms to individuals who cannot possess such firearms. I have acquired knowledge and experience as to firearms and ammunition and the interstate nexus of firearms and ammunition, due to investigations, research, records, and training. I prepare reports and official correspondence relating to the identification, origin, and classification of firearms and ammunition under the provisions of the Federal firearms laws. During the course of my duties, I have seized several hundred firearms and hundreds of rounds of ammunition from the criminal element. As such, I have examined the firearms for the purpose of determining the manufacturer, model, caliber/gauge, and serial number; the place of manufacturer; function and design, and/or status as related to the National Firearms Act.

2. This affidavit is in support of a Complaint against Sharieef Dupree (*hereinafter* DUPREE). This affidavit is based upon my conversations with other law enforcement officers and other individuals and my review of relevant documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of this investigation. Where the contents of documents, and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based on interviews with law enforcement officers of the Baltimore Police Department (*hereinafter* BPD), as well as a review of records maintained by this agency, I have learned the following:

> On June 5, 2012 at approximately 6:55 p.m., Sgt. Burns with the BPD was notified by Lt. Ward to switch to the "C" channel on his department radio for a report from retired Baltimore Police Officer Leon Jesus. Leon Jesus, now a City Watch Camera Monitor, had information for him in reference to a possible armed person at the location of 656 Cokesbury Avenue, in Baltimore, Maryland.
>
> Once on the "C" channel, Leon Jesus advised that there was a male wearing a yellow shirt standing on the porch of 656 Cokesbury Avenue that was displaying very strong characteristics of an armed person. Based on this information, Det. Romey, Det. Hersl and Sgt. Burns immediately responded to 656 Cokesbury Avenue to further investigate. Once at that location, they observed a male matching the description provided by Jesus Leon. Furthermore, the subject was wearing a yellow shirt and standing on the porch of the residence described. This person would be later identified as DUPREE.



The detectives exited their unmarked vehicle and began to approach the residence, when DUPREE noticed them and ran inside the dwelling. Believing him to be armed, Det. Romey followed DUPREE into the residence and observed him throw a black handgun onto a couch. DUPREE then jumped over the couch and ran out the back door. Det. Romey remained inside the dwelling and secured the other persons at that location along with the black handgun.

Upon seeing DUPREE run into the residence, Det. Hersl immediately ran to the back of the dwelling. Soon thereafter, Det. Hersl observed DUPREE exit the back door and run up the rear alley of the even side of 600 Cokesbury Avenue. Det. Hersl pursued DUPREE and finally caught up to him in the 600 block of Bartlett Avenue. Det. Hersl observed DUPREE run up onto a porch at that location and tried to hide by laying on the floor. Upon approach, Det. Hersl ordered DUPREE to put his hands where he could see them. In response, DUPREE stated, "Hersh I didn't have a gun. I just got some cokes and dopes in my pocket." Through his training and experience, Det. Hersl knew that the term "cokes" was used to refer to cocaine and "dopes" was used to refer to heroin.

DUPREE was placed under arrest. Search incident to arrest revealed 1 clear bag containing 7 blue ziplock baggies with a white rock substance. Also recovered were 6 clear gel caps with a white powder substance. Each of these items were in DUPREE's right front pants pocket.

Det. Hersl then transported DUPREE to the dwelling of 656 Cokesbury Avenue where Detectives Romey and Sgt. Burns were standing by the handgun with several other persons that were in the dwelling. Sgt. Burns placed protective gloves on and recovered the handgun, which was determined to be a black Glock 26 9mm handgun (serial# NKL259). Inspection of the weapon revealed that it contained 1 magazine with 4 live 9mm bullets (one in the chamber).

Based on the training and experience of the officers, the amount of suspected controlled substances recovered and the manner in which it was packaged, indicated that DUPREE possessed them with the intent to distribute. As a result, DUPREE was taken to the Eastern District and charged accordingly.

The seized items were taken to the BPD Evidence Control Unit and submitted for further analysis. On July 11, 2012, the BPD Crime Laboratory Section conducted an examination of the suspected controlled substances submitted. During that analysis it was determined that the 1 clear bag containing 7 blue ziplock baggies with a white rock substance was in fact .95 grams of heroin, a controlled substance. It was also determined that the 6 clear gel caps containing a white powder substance was in fact 1.60 grams of heroin, a controlled dangerous substance.

4    Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about June 5, 2012, in the District of Maryland, SHARIEEF DUPREE, the defendant, did

Case 1:13-cr-00256-RDB   Document 1   Filed 01/22/13   Page 4 of 4

13-0126SAG

knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, in violation 21 U.S.C. § 841(a)(1).

RAM MAHANAND
SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES

Sworn to before me this
____ day of JANUARY, 2013.

HONORABLE STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MARYLAND

3